648 A.2d 1315

**UNIVERSITY OF PITTSBURGH, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (JOHNSON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 19, 1994.

Decided Sept. 28, 1994.

Lawrence J. Baldasare and Pamela G. Cochenour, for petitioner.

Alexander J. Pentecost, for respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The University of Pittsburgh (Employer) appeals from the order of the Workmen's Compensation Appeal Board (Board) affirming the referee's decision setting aside the final receipt signed by Frederick Johnson (Claimant) and granting compensation for the period of May 31, 1988 to March 19, 1992. On appeal, Employer claims that there is insufficient evidence to support the Board's finding that Claimant met his burden of proof for setting aside a final receipt, or, alternatively, that Employer was entitled to credit for income earned by Claimant during this period.

The facts are as follows. Claimant was employed as a janitor by the University of Pittsburgh. Claimant originally suffered a work-related injury on October 8, 1987, when a heavy trash can fell on his foot. A notice of compensation payable was issued by Employer on December 29, 1987, reciting that Claimant had sustained a fracture of the small toe of his right foot. Claimant executed a final receipt on May 31, 1988, which stated that he was able to return to work that same day. However, Claimant did not return to work for Employer, and was never offered any suitable work once he signed the receipt. Claimant testified that following his injury he performed light work in connection with his brother's "Set Free Ministry", receiving free room and board, and had worked providing lighting and sound for an entity known as "Fred Johnson and the Marcels", which worked with the Golden Triangle Production Company. However, the referee was "not convinced that the profit earned by Claimant from the business known as Fred Johnson and the Marcels in 1988 caused him to earn any wages from that activity."

In a petition to set aside a final receipt, the claimant has the burden of establishing that all disability attributed to the work-related injury has not ceased. *Jeanes Hospital v.*

*Workmen's Compensation Appeal Board,* 141 Pa.Common-
wealth Ct. 308, 595 A.2d 725 (1991), *appeal denied,* 532 Pa.
648, 614 A.2d 1144 (1992). Employer claims that Claimant did
not meet his burden because the medical evidence credited by
the referee, the evidence of Dr. Robert G. Edwards, M.D.,
does not support the referee's Finding of Fact No. 6 which
states:

> The referee finds that the testimony of Robert G. Edwards,
> M.D., by deposition to be credible and convincing including
> his opinion that the claimant had not fully recovered from a
> right small toe and related right ankle injury when he was
> released to light-duty work in 1988.

Employer argues that there is no factual support in the
record upon which the referee could base a finding that
Claimant remained disabled because Dr. Edwards never testi-
fied that Claimant's injury to his right little toe continued to
cause him disability after the date on which Claimant signed
the final receipt. Furthermore, Employer argues there is no
competent medical evidence in the record which would estab-
lish that any right *ankle* problems were related to the October
8, 1987 work injury. Although the referee found that the
right ankle problems were related to the work injury, Employ-
er claims that Dr. Edwards' testimony on this relationship was
incompetent because not based on record facts. *Sears, Roe-
buck & Co. v. Workmen's Compensation Appeal Board,* 48
Pa.Commonwealth Ct. 161, 409 A.2d 486 (1979). Moreover,
Employer argues that Dr. Edwards was himself unable to say
unequivocally that the right ankle injury was related to the
original toe injury, although the right ankle injury was the
cause of his continuing disability. Thus, Claimant was not
able to meet his burden to show that his disability continued.

We disagree. Dr. Edwards testified that when he saw
Claimant in March and April of 1988 he was still disabled from
injuries to his right ankle, right foot, or, in general, his
"orthopedic problem." (R. 71.) Therefore, he was only re-
leased for light duty. (R. 63, 64, 71.) He was not able or
willing to distinguish between the different injuries, and stated
that they all contributed to his ongoing disability. (R. 73–76.)

Moreover, the referee credited the testimony of Dr. Vilsack who testified that he and his former partner, Dr. Petrantoni, treated Claimant starting in February, 1991 until September, 1991, and performed surgery on Claimant's right toe in March of 1991. Dr. Vilsack stated unequivocally that Claimant's problems in February, 1991 were caused by his previous injury, (R. 92), and that he was not capable of performing his janitorial duties at the University of Pittsburgh in the period February to September, 1991. (R. 12.) Therefore, there was sufficient, competent medical evidence to support the referee's finding that Claimant's disability had not ceased at the time he signed the final receipt.

Moreover, Claimant himself testified that he was still having pain in his toe and still limping when he signed the final receipt. (R. 34.) He stated that in August of 1990, while he was changing a light bulb in his home, he felt a sharp pain in his toe and fell off the ladder, fell down some steps and broke five ribs. He went to the emergency room, and the physician there treated him and referred him to a Dr. Bailey, who eventually referred him to Dr. Petrantoni who performed the surgery on his toe. (R. 36–39.)

We have held that unequivocal medical testimony is necessary to establish a continuing disability for the purpose of setting aside a final receipt only when a claimant has returned to work with no apparent loss of earning power and no obvious residual disability. *Jeanes Hospital; Mellor v. Workmen's Compensation Appeal Board (Wilson Tires, Inc.)*, 102 Pa.Commonwealth Ct. 504, 518 A.2d 1308, *appeal denied*, 519 Pa. 657, 546 A.2d 60 (1988). Here, Claimant never returned to work, and he testified to an obvious residual disability stemming from his work-related injury. Therefore, Claimant's own testimony would be competent to establish his continuing disability for the purpose of setting aside the final receipt.

Here, the combined evidence from Claimant and the medical experts was sufficient to establish a continuing disability for the purpose of setting aside a final receipt. As this Court has stated on numerous occasions, it is within the

referee's power to determine which medical witnesses are credible, in whole or in part. *Mauger & Co. v. Workmen's Compensation Appeal Board (Waltz)*, 143 Pa.Commonwealth Ct. 198, 598 A.2d 1035 (1991). The referee chose to credit the testimony of Claimant and several doctors who testified that he was still disabled at the time he signed the final receipt, and we therefore find that there was ample evidence to support the referee's determination that the final receipt should have been set aside, and compensation should be paid from May 31, 1988 to terminate on March 19, 1992.

Employer also argues that it is entitled to credit for the value of board and lodging paid to the Claimant for his work at the "Set Free Ministry" and for his earnings with the Golden Triangle Production Company. In arguing that he is entitled to credit for the value of the board and lodging, Employer cites Section 309(e) of the Pennsylvania Workmen's Compensation Act (Act)[1], and *Arthur Shelley Trucking & Insurance Co. v. Workmen's Compensation Appeal Board*, 114 Pa.Commonwealth Ct. 138, 538 A.2d 604 (1988).

Section 309(e) of the Act states that for the purposes of calculating the average weekly wage or total wages of an employee, which figure is then used to calculate the compensation payable, board and lodging received from the employer must be included. Similarly, *Shelley Trucking* held that the amount paid in advance for meals and lodging to a long haul trucker per round trip from Pennsylvania to California should be included in the average weekly wage. The *Shelley* court ruled that the advance payment should not be considered reimbursement for expenses incurred on each trip merely because the employer denominated it as such, but because of the express statutory mandate regarding the inclusion of lodging and board, such payment was properly included as wages for the purpose of calculating the disabled employee's compensation.

Here, however, we are not asked to include the value of Claimant's room and board in the weekly wage calculation,

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 582.

but rather to deduct this value from the amount paid as compensation benefits. Thus, Section 309(e) does not provide an express statutory mandate, as it did in *Shelley*, for reducing compensation by the value of the room and lodging received by Claimant. Although we have been unable to find any case law directly on point, we hold that the Act contemplates that the value of room and lodging, if part of the wages received in return for the labor of the claimant, should be included in a claimant's earnings. In fairness, Claimant's earnings, even if minimal, must be credited in favor of Employer in the computation of the award. *Investors Diversified Services v. Workmen's Compensation Appeal Board (Howar),* 103 Pa.Commonwealth Ct. 562, 520 A.2d 958 (1987).

■ Similarly, any earnings from Claimant's work for Golden Triangle Production Company should be credited to Employer, even if the income reported on Claimant's 1988, 1989, and 1990 tax returns was self-employment income. Although the Board, citing *Deichler v. Workmen's Compensation Appeal Board (Emhart/True Temper),* 143 Pa.Commonwealth Ct. 189, 598 A.2d 1030 (1991), *appeal denied,* 530 Pa. 662, 609 A.2d 169 (1992), held that self-employment income does not count as credit against wages, this is not the holding of *Deichler.* Rather, this court in *Deichler* was construing Section 309(e) of the Act [2] which provides that where an employee is working under concurrent contracts with two or more employers, his wages from all his employers shall be considered as if earned from the employer liable for compensation. The *Deichler* court held that a person is not an employee when self-employed, and therefore under the Section 309(e) of the Act, Mr. Deichler was not an "employee working under concurrent contracts." Hence, income derived from self-employment would not be aggregated with other income in determining the level of benefits.

Here, however, we are not calculating the aggregate earnings from two concurrent contracts, but rather we are determining whether the income earned by Claimant should be

**2.** 77 P.S. § 582(e).

subtracted from the amount paid by Employer in compensation. Therefore, we hold, as in *Investors,* that consistent with the intent of the Act and in all fairness, Employer is entitled to credit in the amount of Claimant's earnings with the Golden Triangle Production Company.

Accordingly we affirm in part and reverse in part, and remand this case to the Board to make a factual determination whether the lodging and board received at the "Set Free Ministry" was payment for janitorial services provided by Claimant. If the Board should find that it was payment, then it should determine the value of the room and lodging and credit this amount to Employer. Moreover, a determination should be made of the amount of income received by Claimant from Golden Triangle Production Company, and this also should be credited to Employer.

### *ORDER*

AND NOW, this 28th day of September, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed in part and reversed in part and the case is remanded for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.